Gustavo Magaña (SBN 305970)
The Law Office of Gustavo Magaña
4701 Patrick Henry Dr. Bldg 16 Suite 15F
Santa Clara, CA 95054
T: (408) 430-0411
F: (800) 650-9326
E: Gmaganaesq@gmail.com

Attorneys for Plaintiff
Melvin Justice, Jr.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Francisco Division)

| | |
|---|---|
| MELVIN JUSTICE, JR., | Case No.    3:18CV05852-EMC |
| Plaintiff, | SECOND AMENDED COMPLAINT FOR |
| vs. | VIOLATION OF CIVIL RIGHTS |
| CITY AND COUNTY OF SAN FRANCISCO, ET AL., | |
| Defendants. | JURY TRIAL DEMANDED |

**NATURE OF THE ACTION**

1.      This case arises from the San Francisco Police Department's unlawful motor vehicle stop and seizure of Melvin Justice. On 9/22/2016, Mr. Justice was driving when he was stopped near the corner of 17th and Rivera streets in San Francisco, CA.

2.      San Francisco Police Sergeant Erick Anderson stopped Mr. Justice without probable cause or reasonable suspicion.

3.      Sgt. Anderson stopped Mr. Justice solely based on his race, specifically for being Black.

4.      Soon thereafter, San Francisco Police Officers Anthony Gomez and Dong Ha also arrived at the scene and took over the investigation and arrest.

5.      Mr. Justice was concerned for his safety due to the aggressive nature and attitude of the officers.

6.      The officers demanded that Mr. Justice exit the vehicle.

7.      Mr. Justice complied with demands to exit the vehicle.

8.      Mr. Justice then informed the officers that he was recovering from an injury and surgery to his left Achilles.

9.      Thereafter, the Officers demanded that Mr. Justice perform field sobriety tests while injured even though they knew of his injury and that the results of some of the physical performance tests would be unreliable.

10.     Mr. Justice was then transported to the police station for a blood draw.

11.     While at the police station, Mr. Justice informed Defendant Officer Gomez that he was exercising his right to decline a blood draw absent a warrant.

12.     Defendant Gomez became enraged and demanded that Mr. Justice comply. However, Mr. Justice maintained his right to refuse an involuntary blood draw absent a warrant.

13.    Thereafter, Defendant Gomez violently assaulted Mr. Justice and threw him to the ground causing further injury and aggravation of his pre-existing injuries.

14.    Mr. Justice also urinated himself while fully clothed due to the attack.

15.    Mr. Justice was fearful for his safety and well-being after the vicious attack and use of excessive force.

16.    After the violent assault, Defendant Officer Ha demanded that Mr. Justice sign the blood draw consent forms.

17.    Mr. Justice then provided coerced consent while he was still reeling from the excessive force and abuse he had been subjected to in retaliation for invoking his right to refuse an involuntary blood draw absent a warrant. But for the threat of violence, Mr. Justice would not have consented to the blood draw absent a warrant.

18.    Mr. Justice was charged with a DUI. However, the district attorney dismissed all charges against Mr. Justice.

19.    Mr. Justice now seeks damages for the violations of his rights under the Fourth Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution.

## JURISDICTION

20.    The claims alleged herein arise pursuant to 42 U.S.C. § 1983, §1981, the Fourth Amendment, and the Fourteenth Amendment to the United States Constitution.

21.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

**VENUE**

22.     Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(2) because the unlawful acts, practices, and omissions giving rise to Plaintiff's claims occurred in the County of San Francisco, which is within this judicial district.

**PARTIES**

23.     Plaintiff Melvin Justice Jr., is a resident of the City of San Francisco.

24.     Defendant CITY and COUNTY of San Francisco (hereinafter "CITY") is a political subdivision organized under the laws of California and a proper defendant in this action as to Mr. Justice's

claims made pursuant to the California Tort Claims Act, Cal. Gov't Code §§ 810-996. Defendant CITY was at all relevant times the employer of Defendants Sergeant Erick Anderson, Officer Anthony Gomez, and Officer Dong Ha. The San Francisco Police Department is a department of the Defendant CITY. Upon information and belief, the CITY, through the San Francisco Police Department, maintains an unlawful policy, custom, or practice of performing unlawful detentions, unreasonable and warrantless searches and seizures, using excessive force, and racial profiling. This unlawful policy, custom, or practice is reinforced by the San Francisco Police Department's supervision and, on information and belief, through its training.

25.     At all times mentioned herein, Defendant Erik Anderson (hereinafter "ANDERSON") was employed as an officer for Defendant CITY.  Defendant ANDERSON is sued individually and as a police officer for Defendant CITY.  By engaging in the conduct described below, Defendant ANDERSON acted under the color of law and in the course and scope of his employment for Defendant CITY.  By engaging in the conduct described here,

Defendant ANDERSON exceeded the authority vested in him as an officer under the United States Constitution and as an employee of the CITY.

26.     At all times mentioned herein, Defendant Anthony Gomez (hereinafter "GOMEZ") was employed as an officer for Defendant CITY.  Defendant GOMEZ is sued individually and as a police officer for Defendant CITY.  By engaging in the conduct described below, Defendant GOMEZ acted under the color of law and in the course and scope of his employment for Defendant CITY.  By engaging in the conduct described here, Defendant GOMEZ exceeded the authority vested in him as an officer under the United States Constitution and as an employee of the CITY.

27.     At all times mentioned herein, Defendant Dong Ha (hereinafter "HA") was employed as an officer for Defendant CITY.  Defendant HA is sued individually and as a police officer for Defendant CITY.  By engaging in the conduct described below, Defendant HA acted under the color of law and in the course and scope of his employment for Defendant CITY.  By engaging in the conduct described here, Defendant HA exceeded the authority vested in him as an officer under the United States Constitution and as an employee of the CITY.

## STATEMENT OF FACTS

28.     On 9/22/2016, Mr. Justice was driving when he was stopped near the corner of 17th and Rivera streets in San Francisco, CA.

29.     At some point, Defendant ERIKSON activated his lights to stop Mr. Justice.

30.     Mr. Justice complied and pulled over.

31.     Defendant Erikson accused Mr. Justice of speeding at a high rate of speed and driving past stop signs. Defendant Erikson indicated that this was the basis for his probable cause to stop him.

32.     Mr. Justice explicitly denies that he was either speeding or running stop signs prior to being pulled over by Defendant Anderson.

33.     Further, Defendant ERIKSON then asked Mr. Justice what he was doing in the neighborhood he was stopped in and stated that Blacks are not usually in that area.

34.     Mr. Justice is a Black man.

35.     Mr. Justice was shocked, confused, and confused by Defendant ERIKSON'S statement.

36.     The City and County of San Francisco and the San Francisco Police Department have a policy, custom, and pattern of stopping Blacks in traffic stops at a significantly higher rate than similarly situated Whites.

37.     The United States Census indicates that as of July 1, 2021, Blacks made up 5.6% of the population and Whites made up 52.8% of the population.

38.     Before the date of the subject incident, on the actual date, and to the present, both Black and White citizens drove on the public streets of San Francisco.

39.     Black citizens are unfairly seen as more predisposed to violence, drug use, and criminality by the City and County of San Francisco and SFPD, even though data shows that similarly situated Whites are more likely to have contraband or other illegal items.

40.     Therefore, Black citizens are being stopped because they are Black and not merely in spite of their race.

41.     Soon thereafter, Defendants HA and GOMEZ arrived at the scene.

42.     Defendants HA and GOMEZ then took over the investigation.

43.     Mr. Justice informed the officers that he had recently suffered a torn Achilles and was still actively recovering from his serious injury.

44.     Nevertheless, Defendants HA and GOMEZ demanded and ordered Mr. Justice to perform physical field sobriety tests that aggravated his pain and were difficult to perform due to his injury.

45.     Thereafter, Mr. Justice was taken to the San Francisco Police Station for further testing.

46.     At the station, Officer Gomez became more agitated with Mr. Justice's questions and invocation of his rights.

47.     Specifically, Mr. Justice indicated he would not consent to a blood draw and would not sign the consent form despite the aggressive insistence of Defendant GOMEZ.

48.     Mr. Justice took his time to read the consent form that the Defendant officers demanded he sign. After carefully considering the written terms, he exercised his right to refuse to sign the consent form.

49.     Defendant GOMEZ then indicated they would obtain a warrant to take Mr. Justice's blood without his consent.

50.     Mr. Justice then attempted to ask for further clarification from Defendant HA about the form and the process.

51.     However, Defendant GOMEZ, who was already highly agitated, pushed Mr. Justice, screamed in his face, and threw him to the ground.

52.     Mr. Justice was shocked, confused, and concerned by Defendant Gomez's rapid escalation and excessive use of force.

53.     Both Defendant GOMEZ and HA grappled with Mr. Justice while he was on the floor.

54.     Mr. Justice also urinated on himself, fully clothed, while the Defendants contorted his body.

55.    After the physical assault, Mr. Justice provided a coerced signature on the blood draw consent form.

56.    At no time during the subject incident did Mr. Justice ever strike or attempt to strike the Defendant Officers.


**DAMAGES**

57.    As a proximate result of the Defendants' conduct, Mr. Justice suffered pain and physical injuries, including but not limited to pain in his left leg/ankle.

58.    As a further proximate result of the Defendants' conduct, Mr. Justice suffered general emotional distress, humiliation, embarrassment, and loss of his sense of security, dignity, and pride.

59.    The conduct of the individual Defendants was malicious, sadistic, wanton, and oppressive.  Mr. Justice is therefore entitled to an award of punitive damages against the Defendants.


**CLAIMS FOR RELIEF**

**First Cause of Action**

Violation of the Fourteenth Amendment and 42 U.S.C. §1983

Against Defendants City and County of San Francisco and ERIKSON

44.    The foregoing allegations are realleged and incorporated herein.

45.    Defendants, acting under color of law and in concert with one another, have engaged in a continuing pattern and practice of intentional race discrimination in pedestrian and traffic stops and subsequent investigations carried out throughout the city. In so doing, Defendants

have caused the Plaintiff and others like him in the Black community to suffer deprivation of fundamental rights to liberty and to be free from unlawful searches, detentions, and seizures on account of race. Specifically, Plaintiff was subjected to these violations because he was a Black male driving and was treated differently than similarly situated Whites within the City.  These rights violated Plaintiff's rights to equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. §1983.

46.    Defendants acting under color of law, institute, authorize, tolerate, ratify, permit and acquiesce in policies, practices, and customs of detention, searches, and seizures that involve intentional race discrimination in the provision of law enforcement services.

47.    Defendants have over several years selected and reaffirmed the choice and decision to stop, investigate, and detain Black citizens specifically because of their race.

47.    Defendant's acts were done in knowing violation of Plaintiff's legal and constitutional rights and have directly and proximately caused Plaintiff's humiliation, physical pain, and emotional distress.

## **Second Cause of Action**

Fourth Amendment (42 U.S.C. §1983)

Against Defendants ERIKSON, GOMEZ, HA

82.    The foregoing allegations are realleged and incorporated herein.

83.    Defendants ERIKSON, GOMEZ, and HA caused Plaintiff to be detained as they attempted to arrest Mr. Justice in violation of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Mr. Justice under the Fourth Amendment of the United States Constitution and applied to state actors by the Fourteenth Amendment.

84.     As a result of the conduct of Defendants ERIKSON, GOMEZ, and HA, they are liable for Plaintiff's injuries because they were integral participants in the violations of Mr. Justice's rights.

85.     The Plaintiff was detained without reasonable suspicion by Defendants as they unlawfully detained Mr. Justice without probable cause.

86.     Mr. Justice denies speeding and failing to stop at stop signs before being pulled over by Defendant ERIKSON.

86.     The conduct of Defendants ERIKSON, GOMEZ, and HA was willful, wanton, malicious, and done with reckless disregard for Plaintiff rights and safety and thus warrants the imposition of exemplary and punitive damages as to Defendants ERIKSON, GOMEZ, and HA.

87.     Accordingly, Defendants ERIKSON, GOMEZ, and HA are each liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. §1983.

88.     Plaintiff also seeks attorney fees under this claim.


**Third Cause of Action**

Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)

By Plaintiff against Defendants GOMEZ and HA

89.     The foregoing allegations are realleged and incorporated herein.

90.     Defendants GOMEZ and HA'S unreasonable use of excessive force deprived Mr. Justice of his right to be secure in his persons and property against unreasonable searches and seizures as guaranteed to the Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

91.     As a result, Plaintiff suffered physical pain and emotional distress.

92.     As a result of the conduct of Defendants GOMEZ and HA, they are liable for Mr. Justice's injuries because they were integral participants in the excessive force. Specifically, Defendant GOMEZ used excessive force by pushing Mr. Justice in anger for exercising his right to refuse to sign the blood draw consent form. Defendant GOMEZ then violently threw Mr. Justice onto the ground and grappled with him with the assistance of Defendant HA.

93.     The use of excessive force was unreasonable under the circumstances. Thus, Defendants GOMEZ and HA deprived Mr. Justice of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

94.     The conduct of Defendants GOMEZ and HA was willful, wanton, malicious, and done with reckless disregard for the rights and safety of the Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendants GOMEZ and HA.

95.     Plaintiff also seeks attorney fees under this claim.


**Fourth Cause of Action**

Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. §1983)

By Plaintiff Against Defendant CITY and COUNTY

96.     The foregoing allegations are realleged and incorporated herein.

97.     While acting under the color of state law and within the course and scope of their employment as police officers for the Defendant CITY police department, Defendants' use of excessive force, unlawful detention, and racial profiling/discrimination deprived Mr. Justice of his rights and liberties secured to him by the Fourth and Fourteenth Amendments,

including his right to be free from unreasonable search and seizure and equal treatment under the law.

98.     Upon information and belief, Defendants ERIKSON, GOMEZ, and HA acted pursuant to an expressly adopted official policy or longstanding practice or custom of the Defendant CITY.

99.     Upon information and belief, Defendants ERIKSON, GOMEZ, and HA were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the detention, excessive force, and racial profiling/discrimination based on the Plaintiff's race.

100.   Defendants deprived Mr. Justice of the rights and liberties secured to him by the Fourth Amendment and Fourteenth Amendment to the United States Constitution, in that said Defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and Plaintiff's, and persons in their class, situation, and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

(a) Employing and retaining as police officers and other personnel, including Defendants ERIKSON, GOMEZ, and HA, at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written CITY Police Department Policies;

(b) Of inadequately supervising, training, controlling, assigning, and disciplining CITY Police Officers, and other personnel, whom Defendant CITY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(c) By failing to adequately train officers, including Defendants ERIKSON, GOMEZ, and HA, and failing to institute appropriate policies, regarding the use of excessive force and unreasonable searches and seizures; reasonable accommodations for citizens with physical injuries, and

(d) By having and maintaining an unconstitutional policy, custom, and practice of using excessive force, racial profiling, and targeting Black citizens, demonstrated by inadequate training regarding these subjects. The policies, customs, and practices of Defendant CITY were done with deliberate indifference to individuals' safety and rights, and

(e) By failing to adequately discipline CITY police officers for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(f) Maintaining a policy of inaction and an attitude of indifference towards citizen complaints of excessive force and false arrests/unlawful detentions, and racial profiling, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in the use of false arrests/unlawful detention, excessive force, and racial profiling.

(g) Failing to institute or adequately address inherent problems with the CITY's police officers' disparate treatment, unlawful detentions, arrests, racial profiling, and use of force on Black citizens. Specifically, Defendant CITY, by and through its Police Officers, discriminates against Black citizens.

101.   By reason of Defendants' aforementioned policies and practices, Plaintiff was injured and subjected to pain, suffering, and emotional distress.

102.   Defendant CITY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. Despite knowing, as stated above, these Defendants condoned, tolerated, and through actions and inactions, thereby ratified such policies. Said Defendant's also acted with deliberate indifference to the foreseeable effects and consequences of these policies concerning Plaintiff's constitutional rights and other individuals similarly situated.

103.   By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant CITY and DOES 1-10 acted with an intentional, reckless, and callous disregard for Plaintiff's health and constitutional rights. Defendants' actions were willful, wanton, oppressive, malicious, fraudulent, extremely offensive, and unconscionable to any person of normal sensibilities.

104.   The aforementioned unconstitutional customs, practices, and policies, in addition to the ratification of the deficient customs, practices, and policies, are evidenced objective studies, including one from the Department of Justice, showing that Defendant CITY by and through its Officers uses force and arrests Black citizens at a rate disproportionately higher than it does white citizens. Numerous local news articles citing objective statistics regarding Defendant CITY'S discriminatory practices. As well as claims made by current or former San Francisco Police department alleging racial discrimination against its own Black officers.  The following court cases are examples of continued misconduct by officers working for the San Francisco Police Department:

(a) Data presented by current San Francisco Police Chief Bill Scott to the Board of Supervisors on March 22, 2022, showed that San Francisco Police Officers are ten times more likely to stop and search a Black citizen than a similarly situated White citizen. Additionally, as noted by the

chief, "The disparities are still very problematic and concerning" and that "We have a lot of

work to do in that area." (SF police 10 times more likely to stop, search Black people than

White" By Will Jarret, March 22, 2022, Missionlocal.org)

(b) Data presented by Chief Bill Scott also showed that San Francisco Police Officers are 12

times more likely to use force on Blacks than on similarly situated Whites. (Id.)

(c) A report by the Blue Ribbon Panel on Transparency, Accountability, and Fairness in Law

Enforcement in 2016 found that while Blacks made up 5.8% of the city's residents, they

constituted about 40%, 20 of 51, of the victims of officer-involved shootings from January 2010

through July 2015. ("San Francisco Police Disproportionately Search African-Americans, Report

Says" by Timothy Williams, July 11, 2016, New York Times)

(d) The same report found evidence of racial disparities in the rate of police stops and searches of

Blacks, even though Officers were far less likely to actually find guns, drugs, or other contraband

on blacks than similarly situated Whites. (Id.)

(e) Further, the report stated that although Blacks accounted for less than 15% of all stops in

2015, they accounted for over 42% of all non-consent searches following stops. (Id.)

(f) Moreover, the report noted that SFPD was refusing to cooperate on many levels in the

investigation as to its practices, and thus due to their policies/customs, the report noted that

SFPD could not evaluate whether its officers were applying the use of force fairly and without

bias. The report also indicated that SFPD was not collecting demographic information about the

individuals who are involved in use of force incidents with SFPD officers. (Id.)

(g) In 2020, Chief Bill Scott's provided a report on data from 2014 to the first quarter of 2020,

which showed that Blacks made up 25% of the total traffic stops in San Francisco, despite only

comprising around 6% of the city's population. ("Data Shows Black People Are Pulled Over By

SF Cops at an Even Higher Rate than Three Years Ago" by Jay Barmann, September 15, 2020,

SFIST.com)

(h) The data also showed that Black men were almost five times as likely to be searched by SF

police than Whites between 2018-2020. (Id.)

(i) In 2016, certain SFPD officers engaged in a texting scandal wherein they used racial and homophobic slurs against several groups, including Blacks. The texts also referenced a Black SFPD Officer, who responded by saying, "It made me wonder what must I do as a Black woman to prove that I'm worthy of wearing the same blue uniform" as her fellow officers. ("'Wild Animals': Racist Texts sent by San Francisco Police Officer, documents show" by Scott Glover and Dan Simon, April 2016, CNN.com)

(j) A Department of Justice report concluded after an investigation of the San Francisco Police Department that "Given the nature of the officers' open and flagrant behavior, the SFPD should have considered that this may be an institutionalized problem and taken steps to address the behavior from an organizational perspective…Officers would not have used such hateful and intolerant language if it were culturally unacceptable." (DOJ review of San Francisco Police finds institutional bias against minorities", theguardian.com)

(k) Finally, Black officers from within SFPD have alleged discrimination against blacks by their own peers. Specifically, in 2016, SFPD Captain Yulanda Williams alleged harassment for wearing her hair in her natural hairstyle. Further, Captain Williams testified in 2016 regarding the mistreatment of minority officers to a panel on bias in policing. Further, a fellow officer told Captain Williams officer during a Black Lives Matter march in 2016 that she needed to be allegiant "to the blue and pick a side. Pick blue over Black." ("Black Police Captain sues SFPD alleging racial discrimination, harassment", By Michael Barba, May 30, 2019, S.F. Examiner)

106.   The aforementioned policy, practices, and pattern were the moving force behind the constitutional violations suffered by Plaintiff.

107.   By reason of Defendant's aforementioned acts and omission, Plaintiff suffered physical pain and emotional distress.

108.   Accordingly, Defendant is liable to Plaintiff for compensatory damages under 42 U.S.C. §1983.

109.   Plaintiff seeks attorney fees under this claim.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1.) Award Plaintiff general, special, and compensatory damages in an amount to be proven at trial.

2.) Award Plaintiff punitive damages against individually named Defendants, and each of them, for their extreme, outrageous conduct in complete disregard for Plaintiff's rights.

3.) Award Plaintiff statutory damages and/or attorney's fees against all Defendants as allowed by 42. U.S.C. §1988.

4.) All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42. U.S.C. §1983 and §12205, , and as otherwise may be allowed by Federal law;

5.) Issue a declaratory judgment that Defendants' conduct as complained herein was a violation of Plaintiff's rights under the United States and the laws of the United States.

6.) Injunctive relief, including but not limited to the following:

    a.  And order prohibiting Defendants and their law enforcement officers from unlawfully interfering with the rights of Plaintiff and others to be free from unreasonable searches and seizures and excessive and unreasonable force;

    b.  An order requiring Defendants institute and enforce appropriate and lawful policies and procedures for stopping and detaining individuals, particularly persons of color and/or Black citizens;

    c.  An order requiring Defendants to train their law enforcement officers concerning racial profiling of Black citizens and other communities of color.

1

7.)  Grant Plaintiff such other and further relief as the Court deems just and proper.

2

3
Dated: 4/18/22                                    Law Office of Gustavo Magaña

4
                                                      __/s/ Gustavo Magaña____

5
                                                      Attorney for Plaintiff

6
JURY DEMAND: Plaintiff demands a trial by jury in this matter, pursuant to FRCP 38(a).

7
                                                    Law Office of Gustavo Magaña

8
Dated: 4/18/22                                     _/s/ Gustavo Magaña____

9
                                                     Attorney for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28